**Slip. Op. 02-135**

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

_____
                                            :
JIANGSU HILONG INTERNATIONAL TRADING         :
CO., LTD.,                                   :
                                            :
                    Plaintiff,               :
                                            :
          v.                                 :     Court No. 02-00311
                                            :
UNITED STATES,                               :
                                            :
                    Defendant,               :
                                            :
CRAWFISH PROCESSORS ALLIANCE,                :
THE LOUISIANA DEPARTMENT OF                  :
AGRICULTURE & FORESTRY and                   :
BOB ODOM, COMMISSIONER,                      :
                                            :
                    Defendant-Intervenors.   :
_____:


          Coudert Brothers LLP (John M. Gurley and Matthew J. McConkey) for Jiangsu Hilong International Trading Co., Ltd., plaintiff.

          Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Lucius B. Lau, Assistant Director, Mark L. Josephs and Ada E. Bosque); Bernard T. Carreau, Acting Assistant Secretary for Import Administration, and Arthur D. Sidney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for the United States, defendant.

          Adduci, Mastriani & Schaumberg, L.L.P. (Will E. Leonard, John C. Steinberger and Mark R. Leventhal) for Crawfish Processors Alliance, The Lousiana Department of Agriculture & Forestry and Bob Odom, Commissioner, defendant-intervenors.[1]

                              Dated: November 4, 2002

_____

[1]     Defendant-intervenors have not submitted any comments to the Remand Results.

**JUDGMENT**

This Court received and reviewed the United States Department of Commerce, International Trade Administration's ("Commerce") Response to Ct. Remand ("Remand Results") (July 26, 2002), which were issued pursuant to the Court's order of June 26, 2002 ("June 26 Order") remanding to Commerce to provide the Court with:

(1)   an explanation of whether the dumping margin assigned to Jiangsu Hilong International Trading Co., Ltd. ("Jiangsu") during Jiangsu or its predecessor's last period of importation, that is 2.75 percent dumping margin, was assigned to Jiangsu:

   (a)   solely on the grounds of Commerce's finding of Jiangsu's affiliation with Ningbo Nanlian's Frozen Foods Company, Ltd. ("Ningbo"); and

   (b)   as a member of the Jiangsu-Ningbo affiliation and not assigned separately to Jiangsu and separately to Ningbo upon the finding of such affiliation; and

(2)   a specific figure of a dumping margin, if such figure (a) can be determined, and (b) is different from 2.75 percent, that would have been assigned to Jiangsu (solely on the basis of Jiangsu's actual dumping activities during the last period when Jiangsu or its predecessor's performance was reviewed and not on the basis of cash deposits that were or could have been applicable to Jiangsu or its predecessor's last entries) had Jiangsu not been found to be affiliated with Ningbo during the last period when Jiangsu's performance was reviewed;[2] and

(3)   an explanation of legal and factual logic of Commerce's

---

[2]

In the June 26 Order the Court further stated that in addressing this issue, Commerce shall also provide the Court with factual data explaining why the affiliation of Jiangsu and Ningbo was granted the dumping margin of 2.75 percent if Jiangsu's entries, that is, the entries of what is assumed to be an indelible member of the affiliation, were allegedly subject to 91.5 percent.

decision to disregard Jiangsu's performance during the period when Jiangsu actually imported the merchandise at issue and was deemed to be an affiliate of Ningbo ("actual performance") and to bind Jiangsu to either the conduct that was effectively superseded by the actual performance or to a later conduct by an affiliate in which Jiangsu had not participated in any way.

Subsequently, on July 22, 2002, this Court issued an order ("July 22 Order") stating that the June 26 Order stands as issued and that Commerce is either to admit that Jiangsu's entries are subject to 2.75 percent deposit rate or to seek this Court's approval for imposition of a deposit rate different from 2.75 percent upon the entries of Jiangsu, <u>if and only if Commerce shows the Court that Commerce's record of the last review during which Jiangsu actually performed provides Commerce and this Court with sufficient evidence to support a finding that Jiangsu's own performance (without accounting for the record associated with Ningbo's) calls for the imposition of a deposit rate different from 2.75 percent</u>. (Emphasis supplied).

Upon consideration of the <u>Remand Results</u>, Jiangsu's comments and Commerce's response, the Court holds that Commerce duly complied with the Court's June 26 and July 22 Orders when Commerce: (1) explained that Jiangsu[3] was assigned the rate of 2.75 percent

---

[3] "Huaiyin 5 changed its name to Jiangsu subsequent to the September 1, 1999 to August 31, 2000 period of review." <u>Remand Results</u> at 1 n.1 (citing <u>Notice of Final Results of Antidumping</u>

(continued...)

for the period of review covering September 1, 1998, through August 31, 1999, because Commerce treated Jiangsu and Ningbo as a single entity, see Remand Results at 6-7; (2) calculated a rate of 62.77 percent for Jiangsu for the period of review covering September 1, 1998, through August 31, 1999, "had [Jiangsu] not been treated as a single entity with Ningbo . . . during that period[,]" id. at 8 and see Def.'s Resp. Pl.'s Comments on Commerce's Remand Resp. of July 26, 2002 ("Def.'s Resp.") at 6-25; (3) adequately provided the Court with a factual explanation of why the affiliation of Jiangsu and Ningbo was granted the dumping margin of 2.75 percent if Jiangsu's entries, that is, the entries of what is assumed to be an indelible member of the affiliation, were allegedly subject to 91.5 percent, see Remand Results at 8-10; and (4) adequately provided the Court with Commerce's legal and factual logic of Commerce's decision to determine a rate of 91.5 percent for Jiangsu pursuant to this Court's June 4, 2002 order. See id. at 10-13. It is hereby

**ORDERED** that the Remand Results filed by Commerce on July 26, 2002, are affirmed in their entirety and Commerce is to impose a

_____

[3](...continued)
Duty Administrative Review, and Final Partial Rescission of Antidumping Duty Administrative Review of Freshwater Crawfish Tail Meat from the People's Republic of China ("Final Results"), 67 Fed. Reg. 19,546, 19,547 (Apr. 22, 2002)).

cash deposit rate of 62.77 percent for Jiangsu;[4] and it is further

    **ORDERED** that the preliminary injunction (enjoining Commerce from the imposition of the cash deposit rate determined by Commerce in <u>Final Results</u>, 67 Fed. Reg. 19,546, with regard to Jiangsu) granted by the Court in favor of plaintiff under the Court's order of June 4, 2002, is dissolved; and it is further

    **ORDERED** that this case is dismissed.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE

Dated: November 4, 2002
      New York, New York

---

[4] The Court is satisfied with Commerce's determination that a cash deposit rate of 62.77 percent should be imposed on Jiangsu because Commerce has adequately demonstrated that Commerce's record of the last review during which Jiangsu's predecessor actually performed provides Commerce and this Court with sufficient evidence to support a finding that Jiangsu's own performance (without accounting for the record associated with Ningbo's) calls for the imposition of a deposit rate different from 2.75 percent.